# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF CONNECTICUT

|  |  |
|---|---|
| **AIR-EVAC EMS, INC., MED-TRANS CORPORATION, GUARDIAN FLIGHT LLC, AND REACH AIR MEDICAL SERVICES LLC,**<br><br>Plaintiffs;<br><br>v.<br><br>**AETNA LIFE INSURANCE COMPANY AND AETNA HEALTH, INC.**<br><br>Defendant. | Case No.<br><br>JURY TRIAL DEMANDED |

## COMPLAINT

Plaintiffs Air-Evac EMS, Inc., Med-Trans Corporation, Guardian Flight LLC, and REACH AIR Medical Services LLC (collectively, "Plaintiffs") file this Complaint against Defendants Aetna Life Insurance Company and Aetna Health, Inc. (collectively, "Aetna"), and would respectfully show the Court as follows:

## INTRODUCTION

Aetna has breached numerous contracts with Plaintiffs wherein it agreed to pay Plaintiffs over $1 million in additional compensation for emergency air ambulance transports provided to patients with health plans that Aetna insured or administered ("Aetna Health Plans"). These contracts, known in the industry as single case agreements ("SCAs"), resolve payment disputes between insurers like Aetna and out-of-network healthcare providers like Plaintiffs. By reaching agreement on the amounts owed for emergency transports, the parties avoid resolving their dispute through other means, such as federal arbitration or state court litigation. Despite multiple outreaches, Aetna has completely stonewalled Plaintiffs, not even providing them the courtesy of

a response despite multiple attempts at outreach.  Accordingly, Plaintiffs have been forced to file this lawsuit to compel Aetna to live up to the bargains it struck.

## PARTIES

1.     Plaintiff Air-Evac EMS, Inc. is a Missouri corporation with its principal place of business in Missouri.

2.     Plaintiff Med-Trans Corporation is a North Dakota corporation with its principal place of business in Texas.

3.     Plaintiff Guardian Flight LLC is a Delaware limited liability company.  Its sole owner is Global Medical Response, Inc. ("GMR") through other solely-owned limited liability holding companies.  GMR is a Delaware corporation with its principal place of business in Texas. Guardian is the successor in interest by merger of Hawaii Life Flight LLC.

4.     Plaintiff REACH AIR Medical Services LLC is a California limited liability company. Its sole owner is GMR through other solely-owned limited liability holding companies.

5.     Defendant Aetna Life Insurance Company is a Connecticut corporation with its principal place of business in Connecticut.

6.     Defendant Aetna Health, Inc. is a Connecticut corporation with its principal place of business in Connecticut.

## JURISDICTION AND VENUE

7.     This Court has diversity jurisdiction over this matter pursuant to 28 U.S.C. § 1332 as all Plaintiffs are diverse from all Aetna Defendants and the amount in controversy exceeds $75,000.

8.      Venue is proper under 28 U.S.C. §§ 1391(b)(1) and 1391(c)(2) because each Aetna Defendant is a resident of this district and the Court has personal jurisdiction over each of them.

## FACTUAL BACKGROUND

9.      The air ambulance industry plays an integral role in the American healthcare system. Air ambulances often serve as the only lifeline connecting critically ill and injured patients to healthcare, particularly in rural areas. They transport trauma, stroke, heart attack, and burn patients and other emergent cases requiring critical care. Without air ambulances, more than 85 million Americans would not be able to reach a Level 1 or 2 trauma center within an hour when emergency care is needed. The delivery of on-demand, life-saving air ambulance services in emergencies requires substantial investments in specialized aircraft, air bases, technology, personnel, and regulatory compliance systems.

10.      Plaintiffs do not have a network agreement with Aetna, meaning they have not agreed to the amount of payment they will receive for providing air ambulance services to patients with Aetna Health Plans. As an out-of-network provider of emergency services, Plaintiffs submit a claim to Aetna with their billed charges.  Aetna responds by issuing an explanation of benefits ("EOB") that includes either an amount allowed for the service and initial payment or the reason for denial of payment.  If Plaintiffs disagree with the amount Aetna allowed, they undertake formal negotiations with it in an attempt to reach an agreed allowable and thus supplemental payment amount.  If an agreement is reached, the parties sign an SCA requiring Aetna to reprocess the claim at the new, agreed allowable.  If no agreement is reached, Plaintiffs may pursue legal remedies under federal and/or state law.  Upon information and belief, Aetna administers health plans insured by affiliate Banner Health and Aetna Health Plan  Inc., including the negotiation and processing of SCAs.

11.    SCAs between Plaintiffs and Aetna each contain the same material terms.    In particular, they contain:

- the specific provider contracting with Aetna;

- the patient who was provided the emergency transport;

- the applicable Aetna claim number;

- the Aetna representative who negotiated and sent the SCA;

- a "GCS" number specific to each SCA;

- a Plan Sponsor Control number;

- the date of service of the emergency transports;

- the covered billed charges;

- the additional amount being allowed on the claim.

*See* Exhibit "A," an example SCA.    In addition, most of the SCAs contain a calculation of the "total allowed" amount, which is the sum of the amount initially allowed on the claim and the additional allowance being agreed upon in the SCA.

12.    In accordance with Aetna's practice, once a payment dispute has been resolved, Aetna sends Plaintiffs an SCA to sign and return.    As explained therein, upon the "execution and return of this agreement," Aetna "agrees to release payment to Provider within a timely manner." In accordance with the parties' course of conduct and state prompt pay laws, a timely manner is within thirty (30) days. The SCA further clarifies that the "additional allowance will not be subject to plan deductible, copayment, or coinsurance."    While an SCA does not guarantee coverage or benefits, industry custom and practice dictates that any post-SCA coverage or benefit issues are

timely communicated by an insurer to a provider with whom it has entered into an SCA, such as through a new EOB.

13.    After an SCA is signed, Aetna is supposed to reprocess the underlying insurance claim using the new total allowable.  This results in the issuance of a new EOB.  Because the additional allowance is not subject to plan deductible, copayment or insurance, the supplemental payment reflected in an SCA should be the amount of the supplemental payment received along with the new EOB.

14.    Aetna has breached at least thirty-five SCAs with Plaintiffs by not reprocessing the underlying claims and releasing payment in a timely manner, *i.e.*, within thirty days of the SCA being returned. These thirty -five claims concern emergency air ambulance transports concerning patients with Aetna Health Plans that took place between April 5, 2022 and October 15, 2025.  For each transport, Aetna determined the allowable and made an initial claims payment.  The amount allowed was disputed by Plaintiffs.  The parties entered into negotiations and reached agreement on the amount to be allowed for the services provided.  These agreements were memorialized in SCAs.

15.    Aetna breached each SCA by not reprocessing the underlying claims and releasing payment in a timely manner, *i.e.*, within thirty days of the SCA being returned. In fact, it has not released any payment at all. Aetna never issued supplemental EOBs or otherwise advised Plaintiffs of any issues with respect to coverage or plan benefits.  As of the date this lawsuit is filed, Aetna is on average 324 days late in paying these thirty-one SCAs, which reflect a total principal amount owed of $1,007,158.50. Attached as Exhibit "B" is chart providing information on each SCA, including the principal amount past due and the current number of days that payment is late.

16.     In March and again in April, 2026, Plaintiffs asked Aetna's counsel for the contact information for someone who processes SCAs and could address Plaintiffs' unpaid SCAs.  No person was ever identified.  Accordingly, on May 18, 2026, Plaintiffs sent a letter to both Aetna and CVS Health (Aetna's parent company) apprising them of the unpaid SCAs. Plaintiffs demanded that Aetna process and pay the amounts owed under the SCAs within thirty days. No response to the letter was received.

17.     Having exhausted all informal means of resolving this dispute, Plaintiffs now seek their legal remedies in this Court.  The principal amount owed on the thirty-five SCAs is $1,007,158.50.

18.     Plaintiffs expect Aetna to continue to enter into SCAs that it does not timely pay. Accordingly, Plaintiffs seek recovery herein of additional amounts owed on SCAs that are past due and produced in discovery in this lawsuit.

## COUNT ONE

### Breach of Contract

19.     Plaintiffs incorporate by reference the allegations set forth in Paragraphs 1-18 as if fully set forth herein.

20.     Plaintiffs and Aetna entered into multiple binding and enforceable contracts for payment of additional amounts owed on emergency services provided by Plaintiffs to patients with Aetna Health Plans. Plaintiffs fully performed their obligations under each contract, and all conditions precedent to recovery have occurred or have been waived. Aetna breached each of the contracts by failing to release the additional payment owed under each contract in a timely manner.

21.    As a direct and proximate result of Aetna's failure to perform its obligations under each of the contracts, Plaintiffs have been denied the benefit of their bargains and have suffered actual damages.

## PRAYER

WHEREFORE, Plaintiffs respectfully pray for judgment against Aetna for the following damages and relief:

a.  Payment of the amount owed on the SCAs listed in Exhibit "B" as well as any past due SCAs produced in discovery;

b.  Pre- and post- judgment interest;

c.  Attorney's fees and costs of suit;

d.  Any and all additional legal or equitable relief to which Plaintiffs may be entitled and this Court deems just and proper.

Dated:  June 26, 2026

PULLMAN & COMLEY LLC

*/s/ Timothy G. Ronan*
Timothy G. Ronan
850 Main Street
P.O. Box 7006
Bridgeport, CT 06601-7006
T: 203.330.2000
F: 203.576.8888

NORTON ROSE FULBRIGHT US LLP

*/s/ Adam T. Schramek*
Adam T. Schramek*
Texas Bar No. 24033045
98 San Jacinto Boulevard
Suite 1100
Austin, TX  78701-4255
Telephone: (512) 474-5201
Facsimile: (512) 536-4598
adam.schramek@nortonrosefulbright.com

Abraham Chang*
Texas Bar No. 24102827
1550 Lamar Street
Suite 2000
Houston, Texas 77010
Telephone: (713) 651-5151
Facsimile: (713) 651-5246
abraham.chang@nortonrosefulbright.com

Dewey J. Gonsoulin III*
New York Bar No. 6168660
Texas Bar No. 24131337
1301 Avenue of the Americas
New York, NY 10019
Telephone: (212) 318-3000
Facsimile: (212) 408-5100
dewey.gonsoulin@nortonrosefulbright.com

*Pro hac vice forthcoming*

*Attorneys for Plaintiffs*